# Third District Court of Appeal

## State of Florida

Opinion filed January 24, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-388
Lower Tribunal No. 15-3240
_____

**Two Islands Development Corp., et al.,**
Appellants,

vs.

**David L. Clarke, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Jerald Bagley, Judge.

Waldman Barnett, Glen H. Waldman, Eleanor T. Barnett and Michael A. Azre, for appellants.

Kubicki Draper, Caryn L. Bellus and Barbara E. Fox; Conroy Simberg Gannon Krevans Abel Lurvey Morrow & Kraft, Hinda Klein, and Dale Friedman; Wicker Smith O'Hara McCoy & Ford, Alyssa M. Reiter and Lindsey A. Hicks; Coffey Burlington and Susan E. Raffanello; Boyd Richards Parker & Colonnelli, James K. Parker and Craig J. Shankman; Cole Scott & Kissane, Scott A. Cole and Lissette Gonzalez; Egozi & Bennett, Bernard L. Egozi and Isaac S. Lew; The Arthur Firm and Arthur J. Jones, for appellees.

Before SUAREZ, EMAS and LOGUE, JJ.

EMAS, J.

## INTRODUCTION

Appellants, the plaintiffs below, appeal the trial court's final order dismissing, with prejudice, all counts against all defendants.

For the reasons that follow, we reverse the trial court's order dismissing with prejudice all counts against the Williams Island Defendants, as plaintiffs had already voluntarily dismissed those defendants prior to the trial court's entry of a written order of dismissal. We also reverse the trial court's order dismissing with prejudice Count IV against individual South Island defendants Feder, Sawicki, Kleiman and Coba.

Finally, we affirm the trial court's order dismissing with prejudice counts I, II and III against the South Island Defendants, and dismissing with prejudice Count V against South Island defendant Feder.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

### The Parties

This appeal concerns three islands located in Aventura, Florida—Williams Island, the North Island, and the South Island, and associated groups of appellees, who are the defendants below:

Williams Island is the westernmost island with a singular road and bridge connecting it to the South Island. That same road connects the South Island by bridge to the North Island. Williams Island consists of residential homes and the owners of these residential homes are referred to in the instant case as the "Williams Island Defendants." By virtue of their ownership of homes on Williams Island, they are members of the Williams Island Property Owners' Association (the "WIPOA").

The South Island consists of single family residential homes known as "Island Estates." The owners of these residential homes are referred to as the "South Island Defendants." By virtue of their ownership of homes on the South Island, they are members of the Island Estates Homeowners' Association (the "IEHOA").

The dispute giving rise to this appeal, however, surrounds the development, construction, marketing and sale of a sixteen-story, two-tower building of condominiums on the North Island known as Príve at Island Estates. The South Island and the North Island will be referred to collectively as "the Two Islands."

The appellants/plaintiffs below consist of the following:

- Gary Cohen, in his individual capacity, owns a home on the South Island. Cohen is also successor Trustee of Trust No. 75-LT-21 (the "Trust") which is the owner of the North Island. Cohen controls Two Islands Development, NI Holdings and Last Lot.

3

- Two Islands Development Corp. is the developer of the South Island.

- NI Holdings, LLC owns submerged land adjacent to the islands.

- Last Lot Corp. owns the sole remaining undeveloped lot on the South Island.

- Príve Developers, LLC ("Príve Developers"), is the developer currently developing Príve at Island Estates on the North Island.

- BH3 Realty, LLC is in charge of the marketing and selling of the condominiums currently under development.

**The Allegations**

Appellants' Amended Complaint includes the following allegations:

In 1976, the Cohen family secured a final judgment in Miami-Dade County Circuit Court, which granted the Cohen family certain rights related to the development of the Two Islands and compelled Miami-Dade County to rezone them according to certain stated limitations in the judgment. In 2006, the City of Aventura executed and recorded a "Vested Rights Determination Agreement" that reaffirmed the extent of the vested rights for the Two Islands.[1]

Cohen has served as president of the IEHOA since its inception. In 2011, residents of the South Island expressed an interest in having access to the

---

[1] This agreement stated that the permitted density for any development is seventeen units per acre and cannot exceed a maximum height of 290 feet. Both islands encompass a total of twenty-four acres, allowing for a total of 408 units for the Two Islands. There remains a permissible density of 386 units after subtracting the twenty-two homes built on the South Island. The Príve at Island Estates project consists of 160 total units between two towers with a height of 201 feet.

anticipated amenities that would be included in the development on the North Island. In January 2013, after consulting with counsel, Cohen prepared and presented a plan to the other homeowners of the South Island for their consideration of a Shared Maintenance Association. The plan was emailed to the homeowners with a notice of an upcoming meeting where the plan would be subject to a vote. Also included in the email were details of the planned development on the North Island and a draft of the Easement, Operating and Development Agreement (the "EODA"), which agreement was necessary for creating the Shared Maintenance Association.

The meeting for the vote on the Shared Maintenance Association was initially scheduled for February 21, 2013, but some homeowners expressed that they needed more time to consider the plan and materials submitted. At their request, Cohen continued the meeting and the vote to February 28, 2013. At the February 28 meeting, the Shared Maintenance Association and plans contained therein were approved by a vote of 11-0, with the balance of the eligible homeowners electing to exercise their right not to vote. Pursuant to the vote, on March 7, 2013, Cohen—in his capacity as president of the IEHOA, the trustee of the Trust, and president of Two Islands Development—executed the EODA. Relevant to this appeal, the EODA (attached as an exhibit to the complaint) provides:

D. Two Islands, Association and Trust, and their respective successors (each a "**Party**" and collectively, the "**Parties**") desire to grant, re-grant or re-affirm, as applicable, easements (each an "**Easement Area**" and collectively the "**Easement Areas**") over certain portions of the North Island and the South Island, for the mutual benefit of the Parties, as well as for the benefit of the owners (each a "**Parcel Owner**" and collectively, the "**Parcel Owners**") of the individual single-family homes ("**Dwellings**") and/or condominium units ("**Units**") now or hereafter located within the South Island or the North Island (collectively, the "**Properties**"), including (without limitation), easements from Two Islands and the [IEHOA] which are being granted pursuant to Section 1(d) of Article IV of the Island Estates Declaration.

The EODA contains the following covenants at issue:

13. **Covenants of Further Assurances.** From time to time, at the request of any of the Parties or Associations, the other Parties or Associations shall, without further consideration, promptly agree to execute and deliver any and all other instruments which may be reasonably arising hereunder, including but not limited to any additional easements and other instruments required for the location, installation, construction, maintenance, repair and/or replacement of any and all facilities for water, sewer, electric, other public utilities and surface water management relating to all or any portion of the Properties, and any and all governmental applications, permits, approvals and covenants required in connection with the development, maintenance and operation of any portion of the Properties.

15. **Reservation of Development and Other Rights; Ratification of Easements.** . . . The Associations each agree, on their own behalf and on behalf of their respective members, to execute any joinders, consents, applications, permits, easements, unity of title, declaration or covenant running with the land in lieu of unity of title, or other documents which may be necessary or desirable to obtain or transfer any governmental approvals in connection therewith, and to otherwise fully utilize, enjoy or transfer the Development Rights. . . . The Parties hereto ratify and reaffirm the easements set forth in the Island Estates Declaration and all easements or rights of record affecting the South

Island as of the date of this Agreement, as recorded in the Public Records of Miami-Dade County.

17. **<u>Covenants Running with the Land.</u>** The easements hereby granted, the restrictions hereby imposed, and the agreements herein contained shall be easements, restrictions and covenants running with the land and shall inure to the benefit of and be binding upon the Associations, the Marina Slip Holders and the Parties hereto, and their respective heirs, successors and assigns, including, but without limitation, all subsequent owners of portions of the Properties and all persons claiming under them.

Appellants alleged that, in reliance in part on the EODA, Príve Developers proceeded with the development of the Príve at Island Estates on the North Island. Also in reliance in part on the EODA, Príve Developers took steps toward preselling condominium units. As of the filing of the Amended Complaint, 79 of the 160 units had been sold with approximately $222 million in sales under contract with a total amount of approximately $63 million being held in escrow for the purchasers who were originally told to expect delivery of their units by the first quarter of 2016, but now will not take possession until the second quarter of 2017.

Appellants also alleged that the Williams Island Defendants purchased their properties subject to the vested rights to build high-rise condominium buildings on the North Island and subject to express contracts recorded in the public records and included in their title policies, including one titled "Agreement Not to Object," which prohibits the Williams Island Defendants from objecting to development on the North Island, and requires their cooperation if needed.

7

Appellants alleged that, despite having agreed to the EODA and the Agreement Not to Object, the South Island Defendants and the Williams Island Defendants breached their obligations and have taken steps to protest or otherwise interfere with the development of the North Island. Specifically, this lawsuit is the fifth in a series of cases in the trial court arising from the development of the North Island, which includes:

1. Clarke, et al. v. Two Islands Dev. Corp., et al., lower court case number 14-21513 (the "Trespass Action").[2]

2. Island Estates Homeowners Ass'n, Inc. v. Two Islands Dev. Corp., Gary Cohen as Trustee of Trust No. 75-LT-21, and NI Holdings, LLC, lower court case number 13-35005 (the "IEHOA Action").

3. Príve Dev., LLC v. City of Aventura, lower court case number 15-000898.

4. Williams Island Prop. Owners Ass'n Inc. v. City of Aventura, lower court case number 13-015004 (the "Vested Rights Action").[3]

---

[2] In the Trespass Action, the South Island Defendants sought a temporary injunction to challenge the construction of a sidewalk along the outer boundaries of the South Island Defendants' properties. The trial court granted the temporary injunction and also denied Two Islands' motion for the Trust and Príve Developers to intervene in the underlying proceedings. Two Islands appealed. This Court vacated the temporary injunction finding that it directly interfered with the rights of parties who were not before the trial court, and who were specifically not permitted to intervene. Two Islands Dev. Corp. v. Clarke, 157 So. 3d 1081, 1084 (Fla. 3d DCA 2015). This Court also found that the temporary injunction delayed the Trust's and Príve Developers' receipt of a building permit for the development of the Príve at Island Estates on the North Island. Id.

[3] In case number 15-000898, the WIPOA seeks a declaratory judgment regarding the vested rights of appellants to build on the North Island.

8

Appellants allege that by failing to abide by their agreements and choosing instead to protest the development of Príve at Island Estates by instituting lawsuits, lobbying city officials, and interfering in and preventing a settlement of the Vested Rights Action, appellees improperly caused significant delays to the project. Príve Developers alleges that, as a result of these lawsuits and protests, appellants incurred unnecessary expenses and lost sales due to potential buyers' concerns about the pace of the construction and the uncertainty of ongoing litigation. Appellants also allege that these unforeseen delays caused by appellees' breaches have damaged Príve Developers' reputation.

**The Causes of Action**

Accordingly, appellants filed their original complaint (and an amended complaint) seeking $30,000,000 in alleged damages from appellees. The Amended Complaint contains the following claims:

- **Count I:** Breach of covenant against the South Island Defendants;

- **Count II:** Specific performance of covenant against the South Island Defendants;

- **Count III:** Breach of the duty of good faith and fair dealing against the South Island Defendants;

- **Count IV:** Slander of title against individual South Island defendants Feder, Sawicki, Kleiman and Coba;[4]

---

[4] Count IV was filed only on behalf of appellant/plaintiff Gary Cohen, as Trustee of the Trust and owner of the North Island.

9

- **Count V:** Tortious interference with settlement agreement against Feder and the Williams Island Defendants.

In response, all appellees filed motions to dismiss the Amended Complaint and adopted various arguments advanced in the motions to dismiss filed by other appellees. Appellants filed an omnibus response to the motions to dismiss.

On December 3, 2015, the day before the hearing scheduled on the motions to dismiss, the Williams Island Defendants filed a joint notice to defer the hearing on their motions to dismiss the Amended Complaint, but the trial court went ahead with the hearing the next day. At the conclusion of the hearing, the trial court found the following:

> The Court has had an opportunity to review all of the defendants' motion to dismiss. And I reviewed the response, as well, of the plaintiff, the omnibus response. I have looked at the amended complaint. Also I've looked at the [the EODA], which we all know is operative as far as some critical issues in this case.
>
> At this time the Court grants the motion to dismiss.
>
> First I'm going to refer to [the EODA] . . . .
>
> I have actually looked at, during the course of this argument, [the EODA] and the three operative pages that has only Mr. Gary Cohen's signature I find cannot bind or bound the defendants, the individual defendants to this contract.
>
> It's for that reason – one of the reasons why I dismissed this case against these individual defendants, because they did not enter this contract, they are not, as the Court finds, a party to this contract and cannot be legally obligated to abide by it.

I do also find, based on this Court's familiarity with this case, that the litigation privilege and the anti-SLAPP privilege applies in this case.

So all counts are dismissed . . . with prejudice.

On December 23, 2015, after the trial court's oral ruling, but before the final order of dismissal was entered, appellants filed a notice of voluntary dismissal of the Amended Complaint without prejudice as to the Williams Island Defendants.

On January 13, 2016, the trial court entered its written final order of dismissal. The order provides that the trial court reviewed "all of the motions to dismiss and joinders filed by all the Defendants (including the Williams Island Defendants)" and that the court finds "that none of the Defendants signed [the EODA]" and because of that "they are not parties to it, they are not bound by it, and they have no legal obligations under it."  The order further states "that the litigation privilege and anti-SLAPP statute (§ 720.304, Fla. Stat. (2015)) apply to the claims asserted in the Amended Complaint." The order concluded that the case is dismissed "in its entirety with prejudice as to all Defendants." (Emphasis added.)

This appeal follows.

**ANALYSIS**

This Court reviews de novo the trial court's final order dismissing appellants' Amended Complaint with prejudice, Schilling v. Herrera, 952 So. 2d 1231, 1234 (Fla. 3d DCA 2007), and the well-pleaded allegations in the complaint

must be accepted as true for the purposes of a motion to dismiss and for our review of the trial court's order of dismissal. Morin v. Fla. Power & Light, 963 So. 2d 258, 260 (Fla. 3d DCA 2007).

**1. Whether the trial court erred in entering its written order dismissing the amended complaint as to the Williams Island Defendants, where appellants had already voluntarily dismissed those defendants as parties to the action.**

A hearing was scheduled for December 4, 2015 on all motions to dismiss filed by all appellees. However, the day before that scheduled hearing, the Williams Island Defendants filed a joint notice of deferral of hearing on their motions to dismiss. The deferral was raised at the beginning of the hearing by an attorney for one of the appellees:

> Your Honor, one further thing. After we met yesterday there have been developments between the plaintiff and the Williams Island defendants, who include the gentlemen that you just named, Fels, Shelley, Josephs, Shanker and White.
>
> We have requested and we filed late – I apologize for the timing of it, but it is when we learned – filed late yesterday afternoon <u>a request to defer the motion as it relates to the Williams Island defendants</u>.
>
> <u>Plaintiff is agreeable</u>. As a matter of fact, they met directly before we even became involved.
>
> During the hearing, a second counsel for one of the appellees stated:
>
> We're here today on behalf of – and I want to get the names right for purposes of making this argument – Rubin Salant Revocable Trust under Agreement dated October 20, 2009; Mr. and Mrs. Odulate and Todd Schwartz as trustee of Trust Seven Hundred Thirty.

> We're not here today on behalf of two other defendants we represent for the reasons you heard about deferral.

(Emphasis added.)

During appellants' argument in opposition to the pending motions to dismiss, counsel for appellants stated:

> And the last [claim] is tortious interference. And with regard to the tortious interference, the only defendant that that's applicable to today would be Mr. Feder because the other defendants would be the WIPOA – it's an acronym – who we've agreed for purposes of today we're not going to proceed forward with.

Thus both sides had agreed that the Williams Island Defendants' motions to dismiss were being deferred and would not be considered or ruled upon that day; in fact the trial court was not presented with argument specifically addressing the motion to dismiss filed by those defendants.[5]

At the conclusion of the December 4th hearing, the trial court granted the motion to dismiss and orally pronounced that "all counts are dismissed . . . with prejudice."  The trial court's oral pronouncement did not directly address whether this ruling applied to the Williams Island Defendants.

On December 23, before the trial court entered a written order of dismissal, appellants filed a notice of voluntary dismissal without prejudice of the Williams

---

[5] In fairness to the trial court, however, the appellees/defendants had filed motions adopting portions of each other's motions to dismiss, and appellants and appellees had agreed that a single attorney would present arguments on behalf of all plaintiffs and a single attorney would present arguments on behalf of all defendants.

Island Defendants. On January 13, 2016, the trial court entered a written order of dismissal, stating that the case is dismissed "in its entirety with prejudice as to all Defendants."

On January 27, 2016, appellants filed a motion to vacate the January 13, 2016 order, arguing that the dismissal with prejudice of the Williams Island Defendants was improper because, among other things, appellants had filed a voluntary dismissal of those parties prior to rendition of the final order. That motion was never heard by the trial court and was subsequently withdrawn by appellants.

Appellants contend, under these circumstances, the trial court was without authority to enter its final order of dismissal as to the Williams Island Defendants. We agree.

Florida Rule of Civil Procedure 1.250(b) provides that "parties may be dropped by an adverse party in the manner provided for voluntary dismissal in rule 1.420(a)(1) subject to the exception stated in the rule." Thus, a plaintiff has a right to take a voluntary dismissal against less than all defendants in an action. Gonzalez v. Turner, 427 So. 2d 1123, 1124 (Fla. 3d DCA 1983). The method for doing so is provided in Florida Rule of Civil Procedure 1.420(a)(1):

> **(a) Voluntary Dismissal.**
> (1) *By Parties*. Except in actions in which property has been seized or is in the custody of the court, an action, a claim, or any part of an action or claim may be dismissed by plaintiff without order of court

(A) before trial by serving, or during trial by stating on the record, a notice of dismissal at any time before a hearing on motion for summary judgment, or if none is served or if the motion is denied, before retirement of the jury in a case tried before a jury or before submission of a nonjury case to the court for decision, or (B) by filing a stipulation of dismissal signed by all current parties to the action. Unless otherwise stated in the notice or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication on the merits when served by a plaintiff who has once dismissed in any court an action based on or including the same claim.

(Emphasis added.)

As a general rule, the effect of a plaintiff's announcement of a voluntary dismissal is "immediate, final, and irreversible," terminating the trial court's authority to enter further orders as to that defendant who has been dropped from the action. Kelly v. Colston, 977 So. 2d 692, 694 (Fla. 1st DCA 2008).[6] Such a rule applies even where (as here) appellants filed the notice of voluntary dismissal after the trial court had orally announced its ruling dismissing the entire action but before the court entered its written order of dismissal. See Freeman v. Mintz, 523 So. 2d 606 (Fla. 3d DCA 1988); Gonzalez v. Mulreany, 375 So. 2d 621 (Fla. 3d DCA 1979).

Because no written order was entered until after appellants had voluntarily dismissed the Williams Island Defendants, that voluntary dismissal rendered the

[6] There are exceptions (not applicable here) in which the trial court retains case jurisdiction to, *inter alia*, address attorney's fees and costs, enforce its own orders, or to consider a narrow range of circumstances for relief under Florida Rule of Civil Procedure 1.540. See, e.g., Pino v. Bank of New York, 121 So. 3d 23 (Fla. 2013); Giuffre v. Edwards, 226 So. 3d 1034 (Fla. 4th DCA 2017).

15

subsequently-entered order of dismissal ineffective as to the Williams Island Defendants, as the trial court was without authority to enter any further order as to those defendants.[7]

We therefore reverse that portion of the trial court's order which dismissed all claims against the Williams Island Defendants. The remaining discussion therefore addresses the trial court's order, and appellants' claims on appeal, as they relate only to the South Island Defendants.[8]

## 2. Whether appellees were bound by the Easement, Operating and Development Agreement (the "EODA").

Appellants contend that appellees were bound by the EODA, forming a basis for appellants' causes of action in Count I (breach of covenant against the South Island Defendants), Count II (specific performance of covenant against the South Island Defendants) and Count III (breach of the duty of good faith and fair dealing against the South Island Defendants). However, the EODA specifically provided that "in no event shall any of the South Island easement areas include any portions

_____

[7] Therefore, and as a practical matter, appellants' notice of voluntary dismissal of the Williams Island Defendants operated as a dismissal without prejudice, and the trial court's subsequent order dismissing all claims against the Williams Island Defendants with prejudice was of no force and effect.

[8] We therefore express no opinion whether, or the extent to which, our affirmance of the remaining portion of the trial court's dismissal order would apply with equal force to the Williams Island Defendants had appellants not voluntarily dismissed them as parties to the action.

16

of the individual lots within the South Island, other than the easements and rights of record existing as of the date of this agreement."

In the instant case, a central focus of appellants' claims involved the construction of a sidewalk over the individual lots of the South Island Defendants. Because any portion of the individual lots within the South Island (other than easements and rights of record existing as of the date of the EODA) were expressly excluded, the South Island Defendants were entitled to contest or protest such activity occurring on or planned for their property.

We further conclude that the trial court correctly determined that the South Island Defendants were not parties or signatories to the EODA and were not bound by its terms. As discussed earlier, the EODA defined the term "Parties" as Two Islands Development Corp., Island Estates Homeowner's Association, Inc., and Gary Cohen as Trustee under the Trust Agreement dated December 22, 1995, and their respective successors. On its face, while the South Island Homeowner's Association was a party to the EODA, the individual owners (i.e., the South Island Defendants) were not, and in fact were separately defined in the EODA as "Parcel Owners."

Nor can appellants prevail upon their argument that the EODA is a covenant running with the land, therefore binding the South Island Defendants even though they were not parties or signatories to the EODA. A covenant running with the

land must create an interest in the property itself and affect the mode and use or enjoyment of the premises. Suniland Assocs., Ltd. v. Wilbenka, Inc., 656 So. 2d 1356 (Fla. 3d DCA 1995); Maule Indus. v. Sheffield Steel Prod., 105 So. 2d 798 (Fla. 3d DCA 1958). The South Island Defendants' individual lots are specifically excluded from the EODA. As a result, the EODA cannot and did not create an easement on those individual lots and therefore cannot create an "interest" in those lots such that it could constitute a covenant running with the land.[9] The trial court properly dismissed Counts I, II and III against the South Island Defendants on this basis.[10]

### 3. Whether appellants' remaining claims are barred by the litigation privilege.

Additionally, we hold that the trial court properly determined that, as to individual South Island defendant Feder, the tortious interference with a settlement claim (Count V) was barred by the litigation privilege.[11]

---

[9] We also reject appellants' contention that the trial court acted prematurely in dismissing the action based upon its construction of the EODA. The EODA was attached as an exhibit to the Amended Complaint and is considered a part of the "four corners" of the pleading in the context of ruling on a motion to dismiss. See Fla. R. Civ. P. 1.130(b) (providing that "[a]ny exhibit attached to a pleading must be considered a part thereof for all purposes"); Santiago v. Mauna Loa Invs., LLC, 189 So. 3d 752 (Fla. 2016); Blue Supply Corp. v. Novos Electro Mech., Inc., 990 So. 2d 1157 (Fla. 3d DCA 2008); Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490 (Fla. 3d DCA 1994).

[10] We further hold, without additional discussion, that the trial court properly dismissed Counts I, II and III against the South Island Defendants upon a determination that those counts were barred by Florida's anti-SLAPP statute, section 720.304, Florida Statutes (2015).

As a general rule, Florida's litigation privilege affords absolute immunity for any act occurring during the course of judicial proceedings, so long as the act is "relevant or material to, the cause in hand or subject of inquiry." Myers v. Hodges, 44 So. 357, 361 (Fla. 1907); Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 383 (Fla. 2007); Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606 (Fla. 1994).

In Levin, 639 So. 2d at 608, the Florida Supreme Court extended the litigation privilege, finding that "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." Levin further held that "[j]ust as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct." Id.

The Florida Supreme Court in Echevarria, 950 So. 2d at 384, further extended the litigation privilege, holding that "[t]he litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those

---

[11] Because we have already determined, on other grounds, that the trial court properly dismissed Counts I, II and III, see discussion *supra*, we do not reach the question of whether the litigation privilege barred these claims as well.

19

initiated pursuant to a statute, or some other origin. Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding."[12]

In the instant case, the alleged actions by Feder and others,[13] which form the basis for the claim of tortious interference with settlement agreement (Count V), constitute protected communicative acts.[14] Appellants alleged that Feder made representations which "intentionally and unjustifiably interfered with the Settlement Agreement [in the Vested Rights Action involving the Williams Island Property Owners' Association], after Feder convinced the Williams Island Defendants to join forces in the litigation filed by the IEHOA [the Island Estates Homeowners Association]." Appellants further allege that, as a result of Feder's representations, the "Williams Island Property Owners' Association breached the Settlement Agreement and joined IEHOA in litigation against Plaintiffs," resulting in damages.

---

[12] Though not directly relevant to our decision, we note that the Florida Supreme Court recently held that the litigation privilege did not bar the filing of a malicious prosecution claim that was based upon the act of adding a party defendant to a civil suit. Debrincat v. Fischer, 217 So. 3d 68 (Fla. 2017).

[13] Count V set forth a claim of tortious interference against Feder and the Williams Island Defendants.

[14] Our court, in the recent case of Arko Plumbing Corp. v. Rudd, 230 So. 3d 520 (Fla. 3d DCA 2017) distinguished communicative and noncommunicative acts in delineating the proper boundaries for application of the litigation privilege. We held under the facts in Arko that the attorney's noncommunicative acts fell outside the protection of the litigation privilege. Arko, 230 So. 3d at 526.

The tortious interference claim against Feder is barred by the litigation privilege because the alleged representations and actions by Feder "occur[ed] during the course of a judicial proceeding" and these alleged acts "ha[ve] some relation to the proceeding." Levin, 639 So. 2d at 608. Thus, dismissal of this count with prejudice, based on the litigation privilege, was proper.

However, we hold that the trial court erred in dismissing Count IV, alleging slander of title against four individual South Island defendants. In that count, Cohen (as trustee of the Trust) alleges that he is the owner of the North Island; that Cohen was currently developing Príve at Island Estates on the North Island, and that four individual South Island defendants (Feder, Sawicki, Kleiman and Coba), in an effort to thwart Cohen's planned development of Príve at Island Estates, made false and malicious statements about the nature of Cohen's interest in the North Island, including false and malicious statements to prospective buyers that Cohen did not have the right to build the planned development and that people coming to sales events should "turn around their cars" because no multi-family project would be built on the North Island. Count IV further alleges that these defendants published these misrepresentations to third parties, causing damages which include lost sales and reduced marketability of the property.

"An action for slander of title is based upon the false and malicious statement, oral or written, made in disparagement of a person's title to real or

personal property, or of some right of his, causing him special damages." Old Plantation Corp. v. Maule Indus., Inc., 68 So. 2d 180, 181 (Fla. 1953) (internal citations omitted). Given the allegations of the complaint, and the present stage of the proceedings, we conclude that the trial court erred in dismissing appellants' claim that these four individual South Island Defendants made false and slanderous statements and misrepresentations regarding Cohen's ownership rights to the property.

**CONCLUSION**

We affirm the trial court's order dismissing with prejudice counts I, II and III against the South Island Defendants, and dismissing with prejudice Count V against individual South Island defendant Feder.

We reverse those portions of the trial court's order that dismissed with prejudice all counts against the Williams Island Defendants, and that dismissed with prejudice Count IV against individual South Island defendants Feder, Sawicki, Kleiman and Coba.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.[15]

---

[15] We affirm without further discussion the remaining issues raised by appellants.